# **EXHIBIT 3**

THE STATE OF SOUTH CAROLINA
In the Supreme Court

IN THE ORIGINAL JURISDICTION

Richard Bernard Moore ................................................................................................Petitioner,

v.

Bryan P. Stirling, Director of the
South Carolina Department of
Corrections, and South Carolina
Department of Corrections........................................................................................ Respondents.

**Return to Petition for Common Law Remedial Writs of Certiorari and Mandamus,
and Return to Petition for Original Jurisdiction and Declaratory Relief**

Richard Bernard Moore (Petitioner) petitioned this Court for common law remedial writs of certiorari and mandamus against Brian P. Stirling and the South Carolina Department of Corrections (SCDC) (Respondents) on November 16, 2020. Additionally, Petitioner simultaneously moved before this Court for a stay of execution and petitioned this Court to accept under the Original Jurisdiction of this Court his Complaint seeking declaratory relief against Respondents.

Respondents assert that Petitioner's petitions should be denied, and that he has not established that he is entitled to the relief he seeks.

1

## **DISCUSSION**

**I.    Jurisdictional Issues**

Petitioner Richard Bernard Moore, a SCDC inmate sentenced to death, has petitioned this Court to either accept his proposed Complaint for declaratory relief in the Court's Original Jurisdiction, or, alternatively, to grant a Writ of Certiorari and issue a Writ of Mandamus, which essentially asks for the same relief as requested in the Complaint for Declaratory Relief.  In both the Complaint and Petition for Writ of Mandamus,   Moore seeks to have this Court compel SCDC and/or its Director to disclose specific information about SCDC's execution procedures and protocols, claiming that Moore has some form of Due Process right to the requested information before he makes an election of execution method pursuant to S.C. Code Ann. § 24-3-530.

Section 24-3-530 provides, in pertinent part, that a condemned person must elect between the methods of electrocution or lethal injection in writing, at least fourteen days before the execution date, or the option to elect is waived and the death penalty must be administered by lethal injection.  *See* S.C. Code Ann. § 24-3-530.  The statute is devoid of any language requiring SCDC to provide to the condemned person additional information about the two statutorily approved methods of execution prior to the condemned person making the election.  *Id*.

**a.  Petition for Writ of Certiorari and Writ of Mandamus**

With regards to Petitioner's petition for Writ of Certiorari and Writ of Mandamus, Respondents respectfully submit that the petitions are improper and should be denied.  Petitioner argues the common law remedial writs of certiorari and mandamus should be granted against Respondents because South Carolina's capital punishment statute requires Respondents' compliance, and to protect Petitioner's due process rights. However, Petitioner recognizes that a petition for a writ of certiorari in this case is not the appropriate avenue for the relief sought. *See*

2

Pet. for Writ of Cert. and Mandamus 2, n.1 ("In an abundance of caution . . . [Petitioner] has filed the present case as a joint petition for writs of certiorari and mandamus in the Court's original jurisdiction.").

A writ of certiorari is ordinarily only appropriately issued for the Court to review: (1) a final decision by the Court of Appeals; (2) a final decision under the Post-Conviction Relief Act;[1] or (3) a final order of the circuit or family court denying or granting DNA testing under the Access to Justice Post-Conviction DNA Act.[2] Rules 242, 243, and 247, SCACR. Additionally, there are certain instances where the Court may entertain matters in its original jurisdiction. Rule 245, SCACR. However, the Court "will not entertain matters in its original jurisdiction when the matter can be determined in a lower court in the first instance," unless the public interest is involved, or "if special grounds of emergency or other good reasons exist why the original jurisdiction of the [Court] should be exercised." Rule 245(a), SCACR.

Here, a petition for a writ of certiorari is inappropriate because it is not seeking review of (1) a final decision by the Court of Appeals; (2) a final decision of a PCR court; or (3) a final decision under the Post-Conviction DNA Act. Rather, Petitioner is seeking for this Court to issue an extraordinary writ more appropriately brought, if at all, in the Court's original jurisdiction. Petitioner appears to recognize this defect, as Petitioner has also requested the Court to review these matters in its original jurisdiction. *See Binney v. State*, 384 S.C. 539, 541 n.1, 683 S.E.2d 478, 479 n.1 (2009) ("A matter may not be before th[e] Court by way of a writ of certiorari *and* in [its] original jurisdiction.") (emphasis in original); *Aiken v. Byars*, 410 S.C. 534, 536, 765 S.E.2d 572, 574 (2014) (stating the cases were brought before the Court in its original jurisdiction);

---

[1] S.C. Code Ann. §§ 17-27-10 to -160.

[2] S.C. Code Ann. §§ 17-28-10 to -120.

*Laffitte v. Bridgestone Corp.*, 381 S.C. 460, 674 S.E.2d 154 (2009) (allowing an interlocutory appeal because the case presented "exceptional circumstances as it involve[ed] a novel question of law in a matter that ha[d] been the subject of numerous claims in state and federal courts").

Petitioner seeks a Writ of Certiorari in an attempt to get this Court to issue a Writ of Mandamus to force Respondents to provide detailed information relating to the execution protocols for lethal injection and electrocution established by SCDC. Not only is the Writ of Certiorari the inappropriate mechanism to seek this review, Petitioner cannot show the need for such an extraordinary writ as that of Mandamus in this case.

While this Court has the power to issue writs or orders of injunction or mandamus, *see* S.C. Const. Art. V, § 5; S.C. Code Ann. § 14-3-310, that power should be sparingly exercised. The writ of mandamus is "the highest judicial writ known to law." *Willimon v. Cty. of Greenville*, 243 S.C. 82, 86, 132 S.E.2d 169, 170 (1963). "[I]t is not the purpose of the writ to *establish* a legal right, but to *enforce* one that has already been established." *Id.* at 87, 132 S.E. 2d at 171 (emphasis added). To obtain a writ of mandamus, the petitioner must show (1) the respondent has a duty to perform the act; (2) the duty is ministerial in nature; (3) the petitioner has a specific legal right for the respondent to perform the act; and (4) the petitioner has no other legal remedy. *Id.*

Here, without waiving any other arguments, Respondents assert Petitioner clearly cannot satisfy the fourth element to obtain a Writ of Mandamus. Petitioner argues he has no other legal remedy; however, Petitioner simultaneously filed a Petition asking this Court to take up in its Original Jurisdiction his claim for declaratory judgement. Because Petitioner has not exhausted his declaratory judgement claim, a writ of mandamus should not be granted because Petitioner potentially has another legal remedy. Furthermore, Respondents assert that Petitioner has not established that there is any duty to perform the act in question, nor that such duty would be

4

ministerial in nature. Respondents would crave reference to the only statute Petitioner advances, and would call to the Court's attention that said statute, S.C. Code Ann. Section 24-3-530, is conspicuously devoid of any mention of a duty to provide any information on the protocols and/or procedures for either statutorily approved method of execution.

Wherefore, even if Petitioner's attempt to have this Court consider issuing a Writ of Mandamus thorough a Petition for Writ of Certiorari was proper, which it clearly is not, Petitioner fails to establish the necessary elements for such an extraordinary writ to be issued.

      **b.**      **Petition for Writ of Original Jurisdiction**

With regards to Petitioner's petition to have this Court accept his Complaint seeking Declaratory Relief in this Court's Original Jurisdiction, Respondents respectfully assert that petition should also be denied. Article V, section 5 of the South Carolina Constitution grants the Supreme Court authority to issue writs in its original jurisdiction. It is well-settled the Supreme Court will not entertain matters in its original jurisdiction whenever the matter can be entertained first in the trial court. *Key v. Currie*, 305 S.C. 115, 116, 406 S.E.2d 356, 357 (1991). The procedures governing petitions for original jurisdiction are set forth in Rule 245 of the South Carolina Appellate Court Rules. Rule 245 explains matters appropriate for the Court's original jurisdiction involve "public interest," "special grounds of emergency," or "other good reasons." *See also Key*, 305 S.C. at 116, 406 S.E.2d at 357 ("Only when there is an extraordinary reason such as a question of significant public interest or an emergency will this Court exercise its original jurisdiction.").

Although SCDC strongly disagrees with the merits of Moore's complaint for declaratory relief, SCDC acknowledges the Court has discretion to choose to hear this matter in its original jurisdiction pursuant to Rule 245. Nevertheless, the Court should decline to hear Moore's

5

eleventh-hour arguments. Moore has undoubtedly received due process at every stage of this litigation, and he has exhausted all his state and federal appeals. Moore's last-minute attempt to delay a constitutionally approved punishment should be rejected.

If the Court disagrees and chooses to hear this case in its original jurisdiction, we respectfully request the Court allow the parties the opportunity to fully brief the merits of the issues presented in Moore's complaint. However, to assist the Court in deciding whether this case is appropriate to be heard in its original jurisdiction, SCDC will briefly show why Moore's complaint must fail.

## II.   Petitioner's Complaint

Petitioner's Complaint seeks to have this Court award him Declaratory Relief. He claims that he has a right to such relief that stems from SCDC's decision to not disclose information about its internal execution procedures and protocols. Petitioner claims he requires access to those procedures and protocols before he can make an informed decision as to which method of execution he will choose and for him to assess whether he wishes to raise Constitutional challenges to the execution procedures and/or protocols.[3]

Essentially, Petitioner's argument is that it would be a violation of his Due Process rights,[4] to deny him access to the detailed information he has requested regarding the procedures and protocols associated with the two statutorily approved methods of execution. However, Petitioner

---

[3] S.C. Code Ann. section 24-3-530.

[4] Petitioner attempts to claim that not being provided this information before he makes an election on method of execution, may also constitute an Eighth Amendment violation. Respondents assert such a claim is without merit, as there is no right to this information or colorable argument that absent this information, he will suffer any form of punishment in making his decision. The only punishment he will ultimately receive is the carrying out of his sentence of death, which will be conducted by either electrocution or lethal injection, and both such methods have been upheld as Constitutional. Importantly, Petitioner does not challenge the constitutionality of the methods of execution in these proceedings.

6

fails to point to any statute or case law that would support this conclusory argument.  Respondents assert that Petitioner's Due Process rights were more than adequately protected through the exhaustive appellate procedures associated with his conviction and sentence, all of which he admits have reached final conclusion.  The Court need not entertain this novel collateral attack.

      **a.    Petitioner has not been deprived procedural due process under the United States and South Carolina Constitutions.**

The Due Process Clauses of the Fourteenth Amendment to the United States Constitution and Article I, section 3 of the South Carolina Constitution require no person shall be deprived of life, liberty, or property without due process of law.  U.S. CONST. AMEND. XIV, § 1; S.C. CONST., ART. I, § 3.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause[.]" *Thompson v. State*, 415 S.C. 560, 566, 785 S.E.2d 189, 192 (2016) (quoting *Kurschner v. City of Camden Planning Comm'n*, 376 S.C. 165, 171, 656 S.E.2d 346, 350 (2008)).  The specific demands of due process generally require consideration of: (1) the private interest affected by the official action; (2) the risk of erroneous deprivation of such interest and the probable value, if any, of additional or substitute procedural safeguards; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  "Due Process is not a technical concept with fixed parameters unrelated to time, place, and circumstances; rather, it is a flexible concept that calls for such procedural protections as the situation demands."  *State v. Legg*, 416 S.C. 9, 13, 785 S.E.2d 369, 371 (2016).

Petitioner claims he has a due process right to SCDC's internal policies and protocols to ensure he is not deprived of "his life or subjected to a needlessly painful death without due process

of law." Complaint ¶ 52.   However, his Due Process rights associated with his conviction and sentence, which is what actually impinges on his right to life, have been more than adequately satisfied through the exhaustive appeals process associated with his conviction and sentence.  The question now posed by Petitioner to this Court is different.  It is whether or not he is entitled to detailed information he claims to need in order to elect which method of execution will be used to carry out the sentence in question.  Respondents assert the present circumstances do not implicate due process concerns.

Petitioner fails to point to any statute requiring SCDC to disclose its internal policies and protocols.  It does not appear that any South Carolina court has actually considered this specific question, but the Fifth Circuit Court of Appeals has taken up this question, or at least a question substantially similar to it.

In *Sepulvado v. Jindal*, 729 F.3d 413 (5th Cir. 2013) the Fifth Circuit took up a death-row inmate's claim that the state's refusal to disclose the details of its execution protocol violated his Due Process rights.  Less than a week before the inmate's scheduled execution, the district court issued a preliminary injunction and stay, reasoning the inmate was entitled to review of the full protocol.  The Fifth Circuit reversed, holding "[t]here is no violation of the Due Process Clause from the uncertainty that Louisiana has imposed on [the inmate] by withholding the details of its execution protocol." *Id.* at 420.  Respondents assert that should this Court be inclined to grant the Petition for Original Jurisdiction, the Court should ultimately reach the same conclusion as the Fifth Circuit, and find that Petitioner has not established a Due Process right to the information in question, and therefore cannot establish a Due Process violation.

SCDC's decision to restrict access to the specific details of its execution procedures and protocols is grounded in multiple security related concerns,[5] and furthermore is consistent with the apparent public policy of the State of South Carolina as evidenced by the General Assembly's enactment of a confidentiality statute relating to executions and information tending to identify participants in said executions suggests that information like that requested by Petitioner should be restricted. *See* S.C. Code Ann. Section 24-3-580.

Section 24-3-580 of the South Carolina Code provides in pertinent part, "A person may not knowingly disclose the identity of a current or former member of an execution team or disclose a record that would identify a person as being a current or former member of an execution team." This statute creates a civil cause of action for anyone who knowingly discloses this information.[6] *Id.* Further, section 24-3-590 provides:

> No licensing agency, board, commission, or association may file, attempt to file, initiate a proceeding, or take any action to revoke, suspend, or deny a license to any person solely because that person participated in the execution of a sentence of death on a person convicted of a capital crime as authorized by law or the director.

In 2015, SCDC requested the Attorney General provide clarification to the language of section 24-3-580. 2015 WL 4699337 (S.C.A.G. July 27, 2015). Specifically, SCDC asked the Attorney General whether the phrase "member of an execution team" extends to include "an individual or company" providing or participating in the preparation of chemical compounds intended for use by SCDC in "carrying out an order of execution by lethal injection." *Id.* at *2. The Attorney General concluded section 24-3-580 must be "broadly construed" to include individuals and companies involved in any phase of the execution process, particularly the

---

[5] *See*, Affidavit of Colie Rushton, attached hereto as Exhibit 1.
[6] This information can only be knowingly disclosed upon a court order under seal in order to properly adjudicate pending litigation. *Id.*

9

preparation of lethal injection drugs. *Id.* at *2. The Attorney General explained section 24-3-580 is "a remedial statute designed to prohibit the disclosure of an execution team member's identifying information by providing a civil right of action against those who release such information." *Id.* The Attorney General found this broad interpretation of the statute is consistent with the rationale justifying Lethal Injection Secrecy Laws, which is to ensure confidentiality for the protection of all parties involved. *Id.* at 4.

This same broad reasoning is applicable to prohibit dissemination of information regarding those members and manufacturers of components used to carry out the electrocutions. Furthermore, it appears from the depth of information set forth in his proposed Complaint and Petition for Writ of Mandamus that Petitioner and his team possess more than enough information and research into the two statutorily available methods of execution, and therefore provide no reasonable explanation for why they need the detailed information they seek and that SCDC asserts should be protected.[7]

Simply put, Petitioner is not entitled to the information he seeks, and no statutory or constitutional right would be impinged if he were required to make his election under S.C. Code Ann. Section 24-3-530.

### b. Petitioner has not been denied any required notice guaranteed by the United States and South Carolina Constitutions.

To the extent Petitioner raises additional arguments related to alleged Due Process violations that not covered above, Respondents more specifically state, that while the requirements

---

[7] Respondents recognize that Petitioner has also requested detailed information about what, if any, modifications to the requested protocols have been made due to COVID-19 concerns. Respondents fail to see how a condemned person, subject to death, would have any standing to challenge whether or not COVID-19 protocols exist to protect those involved in the execution.

10

of due process mandate notice, the opportunity to be heard in a meaningful way, and judicial review, *see Blanton v. Stathos*, 351 S.C. 534, 542, 570 S.E.2d 565, 569 (Ct. App. 2002), such requirements are not applicable until a Due Process right has been triggered, and Petitioner has failed to establish the existence of any facts and/or circumstances that would trigger such rights.

Petitioner argues SCDC, by not providing its internal policies and protocols, has failed to provide him with the notice required by due process. However, Petitioner's argument lacks merit because he has been afforded sufficient notice as demanded by due process at every stage throughout his criminal proceedings. Indeed, Petitioner has exhausted his state and federal appellate review.

    **c.**    **Even if Petitioner were able to establish a violation of any right he may have because of the alleged failure to provide the requested information, that claim is now moot**

Although Respondents assert, as is set forth in detail above, that Petitioner, even if allowed to proceed in this Court under its Original Jurisdiction, has failed to establish any violation of any statutory or constitutional right through the purported failure to provide the detailed information he has requested, Respondents assert that such claims are now moot.

"An appellate court will not pass on moot and academic questions or make an adjudication where there remains no actual controversy." *Curtis v. State*, 245 S.C. 557, 567, 549 S.E.2d 591, 596 (2001). "[M]oot appeals result when intervening events render a case nonjusticiable." *Id.*

Attached to this Return is the Affidavit of Colie Rushton. Mr. Rushton has over 46 years of experience with SCDC, and has served in the role of Director of Security since 2007. *See* Aff. Rushton. Mr. Rushton provides in his affidavit sufficient information regarding the make up of and selection process for the members of the execution team that will serve in the carrying out of the execution of Richard Bernard Moore. *Id*. Furthermore, SCDC has decided that it will allow

11

members of Petitioner's legal defense team access to the protocols for both electrocution and lethal injection before Petitioner makes his election on, or before, November 20, 2020. *Id*.

As a result, even though Petitioner has established no statutory or constitutional right to the requested information, any such claim is hereby moot.

## CONCLUSION

Based on the forgoing, Respondents respectfully submit that Petitioner's petitions must be denied, and that he is not entitled to the relief he seeks in his proposed Complaint. Furthermore, should the Court elect to grant the Petition for Original Jurisdiction, Respondents request a reasonable opportunity to fully brief and respond to the purported merits of the proposed Complaint.

RESPECTFULLY SUBMITTED,

## SMITH │ROBINSON

*s/ Daniel C. Plyler*
DANIEL C. PLYLER (S.C. Bar #72671)
AUSTIN T. REED (S.C. Bar #102808)
SAMUEL L. KEY (S.C. Bar #103206)
2530 Devine Street, Third Floor
Columbia, SC 29205
(803) 254-5445
Daniel.Plyler@smithrobinsonlaw.com

*Counsel for Respondents South Carolina Department of Corrections and Director Brian Stirling*

November 18, 2020

Columbia, South Carolina

THE STATE OF SOUTH CAROLINA
In the Supreme Court

IN THE ORIGINAL JURISDICTION

Case No. 2001-021895

Richard Bernard Moore..................................................................................Petitioner,

v.

Bryan P. Stirling, Director of the
South Carolina Department of
Corrections, and South Carolina
Department of Corrections ........................................................................Respondents.

## AFFIDAVIT OF COLIE RUSHTON

PERSONALLY APPEARED BEFORE ME, COLIE RUSHTON, who being duly sworn, deposes and states as follows:

1. I am currently employed by the South Carolina Department of Corrections (SCDC) as Director of Security and Emergency Operations.

2. I have personal knowledge regarding the process by which SCDC carries out executions of inmates condemned to death by lethal injection and/or electrocution. My responsibilities, as Director of Security, included oversite of

1

planning, preparation, and training related to the execution process and the participation in the actual selection of persons – both SCDC employees and civilian medical personnel – who become part of the execution team and carry out the actual execution.

3. SCDC has an established policy, SCDC Policy SK-22.03 "Execution Procedures," which sets forth and addresses training, procedures, and protocols for carrying out an execution by lethal injection and/or electrocution.

4. The SK-22.03 policy has been designated a "Limited Distribution" policy by SCDC, which is the highest level of confidentiality attached to any SCDC policy. The policy is not even available to all employees of SCDC, and certainly should not be made widely available to the general public, as to do so could jeopardize the safety and security of SCDC operations, facilities, staff, and other non-employees.

5. Attached to SK-22.03 is a listing of protocols for both electrocution and lethal injection. Those protocols, as contained in Attachment 1 to SK-22.03, will be used to carry out the execution of Richard Bernard Moore on December 4, 2020.

6. SCDC has taken every effort to make sure its protocols associated with carrying out an execution, as required by Court Order and the laws of this State, meet all established State and Federal requirements.

7.  SCDC has a permanent security execution team. The members of the permanent security execution team have been vetted to ensure they are qualified to carry out their duties, and at train quarterly, at a minimum, on the protocols established for execution. Other members of the execution team to include medical personnel have not yet been selected, but any member of the team will be vetted to ensure they are qualified to carry out their duties, and will be trained appropriately on the protocols established for the execution.

8.  I have personal knowledge of the established training for members of an execution team, and it includes a minimum of quarterly training on the protocols established for execution.

9.  The make-up of the execution team is partially dependent on the method of execution elected.

10. For an execution by means of electrocution, the following will be included, one (1) Physician, three (3) executioners, two (2) Electricians, one (1) Warden, at least five (5) Assistants to Warden, one (1) Religious Leader if requested by the condemned, one (1) Attorney if requested by the condemned, up to eight (8) additional witnesses based on the condemned person's choices, and one (1) Official Non-SCDC Observer.

11. For an execution by means of lethal injection, the following will be included, one (1) Physician, two (2) executioners, two (2) Emergency Medical

3

Technicians or Physician's Assistants, one (1) Warden, at least five (5) Assistants to Warden, one (1) Religious Leader if requested by the condemned, one (1) Attorney if requested by the condemned, up to eight (8) additional witnesses based on the condemned person's choices, and one (1) Official Non-SCDC Observer.

12.    It is my understanding that inquiries have been made as to what, if any, modifications have been made to the execution protocols because of the COVID-19 pandemic. While SCDC has established COVID-19 protocols, which are publicly available on SCDC's website, those protocols would not materially affect or modify the execution protocols. They do affect seating and arrangements for those attending, but not participating, in the execution.

13.    Furthermore, the COVID-19 protocols are not anticipated to materially affect visitation specific to Richard Bernard Moore, as contemplated by SCDC policies and procedures.

14.    I have served as the Director of Security for the South Carolina Department of Corrections since May 2007 and not aware of the agency producing execution protocols to the public.

15.    Notwithstanding the valid security concerns associated with disseminating the execution procedures and protocols, SCDC is willing, and hereby offers, to allow Richard Bernard Moore's legal defense team to review the execution

protocols that are in effect in a confidential setting prior to Richard Bernard Moore making his election of execution method on, or before, November 20, 2020.

FURTHER AFFIANT SAYETH NOT.

*Colie Rushton*

Colie Rushton

SWORN TO BEFORE ME THIS 18th
DAY OF November 18, 2020

_____ (SEAL)
NOTARY PUBLIC FOR S.C.
COMMISSION EXPIRES: 9/18/2028

5

IN THE STATE OF SOUTH CAROLINA
In the Supreme Court

ORIGINAL JURISDICTION

Richard Bernard Moore

                                              Petitioner

v.

Bryan P. Sterling, Director of the South Carolina Department of Corrections, and the South Carolina Department of Corrections

                                              Respondents.

**Proof of Service**

Pursuant to the Supreme Court's Order "RE: Operation of the Appellate Courts During the Coronavirus Emergency," dated March 20, 2020, the undersigned hereby certifies a true copy of the Return to Petition for Common Law Remedial Writs of Certiorari and Mandamus, Return to Petition for Original Jurisdiction and Declaratory Relief, and Affidavit of Colie Rushton has been served upon opposing counsel by sending to opposing counsel's primary e-mail address as listed in the Attorney Information System (AIS):

    **Lindsey S. Vann, Esquire**
    lindsey@justice360sc.org

This 18th Day of November 2020.

                                              *s/ Samuel L. Key*
                                              Samuel L. Key
                                              2530 Devine Street, Third Floor
                                              Columbia, SC 29205
                                              (803) 254-5445
                                              Daniel.Plyler@smithrobinsonlaw.com