**EXHIBIT 10**

THE STATE OF SOUTH CAROLINA
IN THE SUPREME COURT

RECEIVED

Jan 14 2021

S.C. SUPREME COURT

BRAD KEITH SIGMON,

           Petitioner,

v.

STATE OF SOUTH CAROLINA,

           Respondent.

**RESPONSE IN OPPOSITION TO MOTION
FOR TEMPORARY STAY OF EXECUTION**

   Respondent makes this response in opposition to Sigmon's Motion for Temporary Stay of Execution filed on January 11, 2021. Sigmon requests that the Court "decline to set a date for his execution" or enter a stay of the execution. (Motion, p.1). Sigmon has failed to show a basis to prevent the issuance of the notice. It is the issuance of the notice – a ministerial duty – which triggers the statutory provision for setting a date of execution. Sigmon also fails to show any existing challenge to his conviction or sentence that would otherwise warrant a stay under *In re Stays of Execution in Capital Cases*, 321 S.C. 544, 548, 471 S.E.2d 140, 142 (1996). In support of this position, Respondent would respectfully submit the following:

   1.  In 2001, Sigmon bludgeoned David and Gladys Larke to death in the couple's family home. The murders stemmed from Sigmon's obsession with the Larke's daughter – an attempt to neutralize the parents "so he [could] get ahold of Becky" who was then living with the Larkes. His weapon, a baseball bat which he used to deliver multiple devastating blows to each victim's head. He was sentenced to death after his jury trial in July 2002. Sigmon has since filed

a direct appeal, and state and federal collateral actions and appeals, seeking to undo the jury determination.  None have been successful.  His petition to the Supreme Court of the United States to review the denial of federal habeas relief was denied on Monday, January 11, 2021.  *See Sigmon v. Stirling,* 956 F.3d 183, 199-201 (4th Cir. 2020), *cert. denied* 2021 WL 78320 (U.S. Jan. 11, 2021).  He has no further ordinary remedies to pursue.

2. After such exhaustion, the Clerk of the Supreme Court of South Carolina is tasked with sending notice to the South Carolina Department of Corrections to carry out the execution. *In re Stays*, 321 S.C. at 548, 471 S.E.2d at 142; *Reed v. Ozmint*, 374 S.C. 19, 23–24, 647 S.E.2d 209, 211 (2007); S.C. Code § 17-25-370.  The date of execution shall be "the fourth Friday after receipt of such notice … unless stayed by the order of the Supreme Court or respite or commutation of the Governor."  S.C. Code 17-25-370.  Because the setting of the date is governed by this statutory procedure, Sigmon's request for this Court to decline to set a date could only be an effort to prevent issuance of the notice.  By letter dated November 6, 2020, the Clerk rejected a similar argument made in *Richard Bernard Moore v. State*, Appellate Case No. 2001-021895, noting that his duty to issue the notice is ministerial.  The same holds true today.

"[I]t is a ministerial duty of the Clerk of this Court to issue an execution notice pursuant to § 17-25-370." *Roberts v. Moore*, 332 S.C. 488, 488, 505 S.E.2d 593 (1998). The duty is ministerial because it is prompted by "fixed and designated facts" and does not provide any "discretion in determining how or whether the act shall be done or the course pursued." *See Wilson v. Preston*, 378 S.C. 348, 354, 662 S.E.2d 580, 583 (2008) (defining ministerial duty). The only question is whether the death sentence has been affirmed throughout Sigmon's various actions for review, both state and federal.  It has.  Sigmon does not contend otherwise.  Therefore, the notice should be issued in compliance with the statutory provision.

3.      Sigmon also asserts the State does not have means to carry out the execution. (Motion, p. 2). That is incorrect. The relevant statute provides for both electrocution and lethal injection. In *Moore*, in the absence of an election between the methods, the method selection defaulted to lethal injection by operation of statute.[1] This Court stayed the Moore execution upon the Department of Corrections advising that despite its efforts that drugs could not be obtained in time for the scheduled execution.[2] But there has not yet been an election or failure to elect in this case. That may only occur if the notice is issued and served. The State readily has electrocution available.

Further, a proposed change to the statute is currently pending in the Legislature and being considered that would allow default to electrocution if lethal injection is not available. See https://www.scstatehouse.gov/query.php?search=SEARCH&searchtext=electrocution&category=LEGISLATION&conid=0000&session=124 (last checked Jan. 13, 2021). Simply, "capital punishment is constitutional. It necessarily follows that there must be a means of carrying it out." *Baze v. Rees*, 553 U.S. 35, 47 (2008) (internal citation omitted). At any rate, the State is not without means of carrying out an execution.

---

[1]     Moore also claimed he was entitled to information on the drugs, similar to the information that Sigmon references. This Court denied Moore's petitions regarding same. (*See Moore v. Stirling*, 2020 Original Jurisdiction filings, Petition for Original Jurisdiction and Declaratory Relief, Petition for Common Law Remedial Writs of Certiorari, Declaratory Relief; Order, November 20, 2020, denying petitions). It is well-established that the *method* to carry out a duly imposed and legal sentence of death is decidedly different than the sentence itself. *See, e.g., Malloy v. South Carolina*, 237 U.S. 180 (1915). The method does not spark the constitutional protections that surround imposition and validity of the sentence. *Id.* Based on the existing law, Respondent agrees with the Court's prior dismissal and denial of a stay based on Moore's perceived right to additional information.

[2]     Respondent is advised that despite on-going efforts, the Department of Corrections still, as of this filing, has not been able to obtain drugs to carry out lethal injection.

3

4.     Sigmon's motion fails to show a stay is otherwise warranted. In strikingly stark error, Sigmon improperly blends his complaints about potential problems with the mechanism, procedures and place of execution with finality of his conviction and sentence. The Attorney General advised the Clerk of Court of the completion of ordinary remedies. (See Letter to the Supreme Court of South Carolina Clerk of Court dated January 11, 2021). The Attorney General bears responsibility for representing the State in various actions including direct appeal and collateral challenges to the convictions and the duly imposed sentence of death. Actions challenging the legality of the convictions and sentence are limited to just that – the legality of the conviction and sentence. *See, e.g., Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) ("the language of the habeas statute is more specific, and the writ's history makes clear that it traditionally 'has been accepted as the specific instrument to obtain release from [unlawful] confinement.' ") (quoting *Preiser v. Rodriguez,* 411 U.S. 475, 486 (1973)); *Al-Shabazz v. State*, 338 S.C. 354, 383–84, 527 S.E.2d 742, 758 (2000) ("the PCR process is restricted to collateral attacks challenging the validity of a conviction or sentence, except for two non-collateral matters specifically listed in the PCR Act.").

In contrast, the Attorney General has no authority to carry out the execution. See S.C. Code § 17-25-380 (notice must reflect that the duty "to execute the judgment and sentence of death" rests with the "Director of the Department of Corrections or his duly appointed office in charge of the applicable correctional facility"). Sigmon's assertion that the "Attorney General makes no representation to its ability to carry out an execution" stems from Sigmon's fundamental misunderstanding of the responsibility "to execute the judgment and sentence of death," which rests with the Director of the Department, and the finality of litigation challenging the conviction and sentence which triggers the execution process.

At any rate, there is no provision in the S.C. 17-27-370 for discretion. Sigmon's request, to the extent he attempts to stop the Clerk from issuing the notice, is without legal support.

5.  Sigmon also complains that the pandemic is cause to stay the execution. (See Motion, p. 5). He takes two paths. In one, he complains his ability to research is limited by safety concerns. In another, he notes that special arrangements must be made for safety considerations in addition to the normal restriction imposed for execution.[3] Neither support an extraordinary departure from the ministerial issuance of the notice, or an eleventh-hour stay of execution.

Again, Sigmon was sentenced to death in July 2002. Though Sigmon asserts that research and development of claims are hampered by COVID limitations and he needs more time to research the viability of other actions, it could hardly be a surprise that finality was approaching.[4] However, a similarly broad and general argument was previously made, and summarily rejected, in *Moore v. State*.[5] (*See, Moore v. State*, Appellate Case No. 2001-021895, Motion to Temporarily

---

[3] The notice is served quickly upon receipt. Nothing in the statute requires a two-week wait for election or prevents Sigmon from expressing his intent to let the matter default. That is particularly in Sigmon's control. Further, Sigmon's argument that needless preparations will be followed and inconveniences imposed assumes he will not be executed. The only logical way to take Sigmon's argument is that he has decided to choose lethal injection and is depending on the Department's prior acknowledgment that the drugs are not readily available, despite its best efforts. If that is so, then it is Sigmon causing the "unnecessary" preparation and inconvenience to his fellow death-row inmates. At bottom, the procedures to be followed are a result of the just, and duly imposed death sentence that must be carried out. The State is following the procedure that is mandated by statute which will involve the Department taking steps to effect that duly imposed and legal sentence of death.

[4] Further, and quite logically, if Sigmon has waited until now, it is simply is not understandable. Again, he was sentenced to death in 2002, and, as shown, his background and circumstances have been repeatedly investigated though different actions over many years.

[5] Also similar to the assertions in the *Moore* litigation, Sigmon's arguments are broadly based on COVID fears and possible concerns for third parties. (See Motion, p. 9). Issues of standing here are clear. Sigmon has not shown any authority to raise a concern for another party. Whether a party wishes to attend – be it for Sigmon, or the family of his victims, the Larkes, or the State – that will always be a personal issue that Sigmon cannot control or direct. The statutory provision he references merely provides limits as to who may attend. See S.C. Code § 24-3-550.

Suspend Setting Execution Date, dated November 2, 2020; Order of November 20, 2020, denying motion for stay). It should be similarly rejected here for the same reasons.

Moreover, the alleged facts and circumstances surrounding conditions and COVID preparation for visitation, attendance and the like, are simply not relevant to the finality of the duly imposed sentence.[6] In fact, specific assertions concerning conditions in the Department of Corrections must be addressed, if they must be addressed at all, by the Department of Corrections. Respondent notes that many executions have been carried out during this pandemic, including one this week, on January 13, 2021, with two more federal executions scheduled. *See* https://www.nytimes.com/2021/01/13/us/politics/lisa-montgomery-execution.html (last checked January 13, 2021). Sigmon also makes a related, but somewhat separate, conservation-of-resources and avoidance of stress argument. (See Motion, p. 4). The family of Sigmon's victims are waiting this step in finality, a modicum of closure in this long process. Little more need be said.

6. Also similar to allegations in the *Moore* ligitation, Sigmon contends this Court should stay the execution to allow him to research possible other petitions/actions to pursue. Respondent readily recognizes that, even though the state offers review through direct appeal,

---

It would be odd to interpret the statute as allowing a defendant's family, friend or counsel to indefinitely delay execution simply by avoiding attendance.

[6] Sigmon also overlooks the obvious – that is that essential services and protections, including correctional facilities, have had to adjust, not simply give up. The Department has responded with safety measures. In fact, on or about October 14, 2020, the District Court dismissed an ACLU lawsuit based in part on the Department's response measures. See http://public.doc.state.sc.us/agency-news-public/homeAction.do?method=view&id=491 (last checked December 10, 2020). Upon information and belief, regular testing is required and in-person visits (either counsel, expert, or defendant's family) on death row are allowed. The Department has, again upon information and belief, imposed additional safety measures for individuals viewing the execution. But again, this does not go for the validity of the convictions or sentence, and it does not support a stay.

post-conviction relief, and post-conviction relief appeal, "habeas corpus relief remains available" in the original jurisdiction of this Court. *Williams v. Ozmint,* 380 S.C. 473, 477, 671 S.E.2d 600, 601 (2008). *See also* S.C. Const. art. I, § 18.  However, unlike direct appeal, post-conviction relief, and post-conviction relief appeal, review through state habeas in this Court's original jurisdiction is not a matter or right.  "Habeas relief is seldom used and acts as an ultimate ensurer of fundamental constitutional rights." *Williams,* 380 S.C. at 477, 671 S.E.2d at 602.  A petitioner "bears a much higher burden in a habeas proceeding." *Id.* "A writ of habeas corpus is reserved for the very gravest of constitutional violations 'which, in the setting, constitute[ ] a denial of fundamental fairness shocking to the universal sense of justice.'" *Id.* (brackets in original) (quoting *Green v. Maynard,* 349 S.C. 535, 538, 564 S.E.2d 83, 84 (2002)).  Yet, Sigmon does not come to this Court with a request to stay in order to consider a specific action or issue.  Rather, he requests a stay to consider his options.  Sigmon has inverted the process.

Sigmon may make "[a] request for a stay pending the filing of" such a petition, but he "must demonstrate that there are exceptional circumstances warranting the issuance of the stay." *In re Stays*, 321 S.C. at 548, 471 S.E.2d at 142.  To warrant habeas relief, Sigmon must allege not just a violation of a constitutional right, but one "which, in the setting, constitutes a denial of fundamental fairness shocking to the universal sense of justice." *Butler v. State*, 302 S.C. 466, 468, 397 S.E.2d 87, 88 (1990) (*quoting State v. Miller*, 16 N.J.Super. 251m 84 A.2d 459 (1951)). Again, as the above procedural history demonstrates, his case has been investigated by several different experts and counsel through multiple stages of review. It is unlikely that Sigmon could show that further review in this Court's original jurisdiction would be allowed or relief warranted. Sigmon offers nothing to show he may meet any of these exceptional circumstances. Preventing the issuance of the notice would simply foster delay and avoidance, and granting a stay on such

7

nebulous and undefined cause would frustrate the extremely important need for finality. "At some juncture judicial review must stop, with only the very rarest of exceptions, when the system has simply failed a defendant and where to continue the defendant's imprisonment without review would amount to a gross miscarriage of justice." *Williams*, 380 S.C. at 479–80, 671 S.E.2d at 603 (citations omitted).

7.     While Sigmon argues counsel's duty to investigate anew, it can hardly be said that the circumstances of the crime and potential mitigation have not been repeated investigated and mitigation considered and reconsidered. Trial counsel presented a hefty mitigation case through fourteen witnesses, both experts and lay witnesses. And, for years, Sigmon stayed in PCR, developing claims with the assistance of two well-qualified, experienced attorneys, along with state funding to aid in preparing his collateral challenge, though relief was denied. *See Sigmon v. State*, 403 S.C. 120, 124, 742 S.E.2d 394, 396 (2013). Sigmon then turned to the federal district court seeking habeas relief under 28 U.S.C. § 2254. With fresh counsel to review and investigate once again to uncover any missed claims, Sigmon offered new affidavits from several witnesses – some of them family members previously interviewed – who recalled, presumably for the first time, additional background and character information that they hope would make a difference. Sigmon alleged PCR counsel were ineffective for not discovering and presenting the information and that he could avoid the procedural bar for that reason. But rather than staying in habeas to litigate, Sigmon asked to stay his federal proceedings and return to state court to exhaust his new found claim. He was allowed to do so, over an objection the stay would unduly delay without just cause as the state action would be dismissed as untimely and improperly successive. And it was dismissed as just that, but only after a substantial delay of nearly three years. On return, the federal court accepted Sigmon's new affidavits to assess his argument to excuse his default, but found

8

Sigmon failed to carry his burden. Sigmon failed to show a claim of substantial merit, and also failed to show trial or PCR counsel were deficient in investigation. *Sigmon v. Stirling*, 2018 WL 4691197, at *21 (D.S.C. Sept. 30, 2018). The Fourth Circuit agreed with the district court that in light of the mitigation case presented at trial, Sigmon's new evidence was largely cumulative; that he failed to show deficiency in trial counsel's investigation; and, that he failed to show ineffective assistance of PCR counsel. *Sigmon v. Stirling,* 956 F.3d 183, 199-201 (4th Cir. 2020). *See also Wong v. Belmontes*, 558 U.S. 15, 28 (2009) ("mitigation strategy failed, but the notion that the result could have been different if only [counsel] had put on more than the nine witnesses he did, or called expert witnesses to bolster his case, is fanciful."). In short, Sigmon has not been denied opportunity to challenge his convictions and sentence. He simply is not entitled to any relief from them.

8.     Lastly, Sigmon also asks for a stay so he may investigate and pursue possible clemency proceedings before the Governor. (Motion, p. 11). Clemency is an executive function separate and apart from the Clerk's duty to issue the notice. See generally S.C. Code § 24-21-910. Seeking clemency is separate and apart for the legal challenges to his convictions and sentence. This is not a factor in issuance of the notice, and could not satisfy the *In re Stays* standard.

## CONCLUSION

The Clerk should be allowed to complete the ministerial duty assigned to him to issue the notice of execution. A jury determined death was the appropriate sentence in this case. That determination, and counsel's quality of representation, has been investigated, challenged, and afforded no relief. Sigmon has exhausted his ordinary remedies. It is time for the notice to issue.

Further, and for all the reasons argued above, Sigmon has not shown that a stay of execution under *In re Stays* is warranted. Sigmon has no pending extraordinary action to challenge his convictions and/or sentence much less an action that would warrant a stay.

Lastly, the State does presently have a means of execution available – electrocution. If electrocution shall be the manner of execution, Sigmon has shown no need for a stay by his general complaints on lethal injection drugs and/or availability. At most, the argument is premature in light of the election provision and the possibility of electrocution.

                                      Respectfully Submitted,

                                      ALAN WILSON

                                      Attorney General of South Carolina

                                      DONALD J. ZELENKA
                                      Deputy Attorney General

                                      MELODY J. BROWN
                                      Senior Assistant Deputy Attorney General

                                      *s/Melody J. Brown*

By:_____
                                      MELODY J. BROWN
                                      S.C. Bar No. 14244

                                      Post Office Box 11549
                                      Columbia, South Carolina 29211
                                      (803) 734-6305

                                    ATTORNEYS FOR RESPONDENT

January 14, 2021